UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BENJAMIN ESPINOZA,                  )    CASE NO. SA CV 02-358-SJO (PJW)
                                    )
              Petitioner,           )    FINAL REPORT AND RECOMMENDATION
                                    )    OF UNITED STATES MAGISTRATE JUDGE
     v.                             )
                                    )
JOSEPH L. MCGRATH, Warden,          )
                                    )
              Respondent.           )
_____)

     This Final Report and Recommendation is submitted to the Hon.
S. James Otero, United States District Judge, pursuant to 28 U.S.C.
§ 636 and General Order 05-07 of the United States District Court for
the Central District of California.  For the reasons discussed below,
it is recommended that the Petition be denied and the action be
dismissed with prejudice.[1]

_____

     [1]  This Final Report and Recommendation has been issued to
address Petitioner's Objections to the Original Report and
Recommendation regarding the Court's denial of Grounds Two and Three,
as well as to discuss a recently issued decision from the California
Supreme Court that is relevant to Ground Two and part of Ground Three.
(*See infra*, sections V.B.3 and V.C.4.)

I.

SUMMARY OF PROCEEDINGS

A.   State Court Proceedings

In August 1997, Petitioner was convicted by a jury in Orange County Superior Court of three counts of second degree robbery, four counts of false imprisonment, possession of a firearm in a school zone, assault with a firearm, receiving stolen property, and street terrorism.  The jury also found that Petitioner personally used a firearm during the robberies and assault and that he committed all the crimes, except for street terrorism and receiving stolen property, for the benefit of a gang.  (Clerk's Transcript ("CT") at 318-34.)  On September 10, 1997, the court sentenced him to thirty-four years and four months in prison.  (CT at 339-41.)

Petitioner appealed to the California Court of Appeal, which affirmed his conviction and sentence.  (Lodged Doc. Nos. 3 and 5.)  He then filed a petition for review in the California Supreme Court, which was summarily denied.  (Lodged Doc. Nos. 6 and 7.)

In December 2000, Petitioner filed a petition for writ of habeas corpus in the Orange County Superior Court, which was denied in January 2001.  (Lodged Doc. No. 9.)  Petitioner then filed habeas petitions in the California Court of Appeal and the California Supreme Court, which were denied in 2001 and 2002.  (Lodged Doc. No. 10-15 and 18.)

B.   Federal Court Proceedings

In April 2002, Petitioner, proceeding *pro se*, filed a Habeas Corpus Petition in this court, pursuant to 28 U.S.C. § 2254, arguing:

1.   His sentence violated due process, the Eighth Amendment, and the Sixth Amendment.

2

2.   There was insufficient evidence to support the gang enhancements.

3.   Trial counsel violated Petitioner's Sixth Amendment right to effective assistance of counsel by committing the following errors:

a.   Counsel improperly stipulated to the "pattern of criminal gang activity" element of the gang enhancement;

b.   Counsel failed to request an instruction on California Penal Code section 12022(a)(1) (armed with a firearm) as a "lesser included enhancement" of California Penal Code section 12022.5(a) (personally using a firearm); and

c.   Counsel failed to object to the gang expert's testimony regarding Petitioner's "STEP" warnings.

4.   Appellate counsel violated Petitioner's Sixth Amendment right to effective assistance of counsel by failing to raise Claims One and Two on direct appeal.

(Petition at 5-6.[2])

II.

STATEMENT OF FACTS

The California Court of Appeal summarized the evidence at trial as follows:

[Petitioner] and two accomplices robbed a market. Armed with a knife, a handgun and a rifle, they took money

---

[2]   Since 2002, the parties have filed numerous briefs addressing various issues.  In March 2006, the Court appointed counsel in anticipation of an evidentiary hearing that was never held.

3

from a cash box and forced the employees to open a safe in a back office.  They forced two of the victims into a freezer and restrained two others while they gathered their loot. The victims gave conflicting testimony about which of the perpetrators wielded firearms during the robberies.

The robbers fled in a stolen car.  A police officer, responding to a silent alarm, gave chase which ended in a dead end street.  [Petitioner] jumped out of the car with money in one hand and a rifle in the other.  As he exited the vehicle, the pursuing officer ordered him to stop and drop the weapon, whereupon [Petitioner] pointed the rifle at the officer.  The officer fired her revolver, striking [Petitioner] in the leg.

Testifying on his own behalf, [Petitioner] admitted planning the robbery, taking part in it, and falsely imprisoning the victims.  However, he denied personally using a firearm during the robbery.  He also denied aiming the rifle at the officer and being a member of a street gang.

(Lodged Doc. No. 5 at 2-3.)

III.

STANDARD OF REVIEW

The standard of review in this case is set forth in 28 U.S.C. § 2254:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

4

1  adjudicated on the merits in State court proceedings unless the

2  adjudication of the claim--

3      (1)  resulted in a decision that was contrary to, or

4  involved an unreasonable application of, clearly established

5  Federal law, as determined by the Supreme Court of the

6  United States; or

7      (2)  resulted in a decision that was based on an

8  unreasonable determination of the facts in light of the

9  evidence presented in the State court proceeding.

10 28 U.S.C. § 2254(d).

11     A state court decision is "contrary to" clearly established

12 federal law if it applies a rule that contradicts Supreme Court case

13 law or if it reaches a conclusion different from the Supreme Court's

14 in a case that involves facts that are materially indistinguishable.

15 *Bell v. Cone*, 535 U.S. 685, 694 (2002).  To establish that the state

16 court unreasonably applied federal law, a petitioner must show that

17 the state court's application of Supreme Court precedent to the facts

18 of his case was not only incorrect but objectively unreasonable.

19 *Renico v. Lett*, 559 U.S. 766, 773 (2010).  Where no decision of the

20 Supreme Court has squarely decided an issue, a state court's

21 adjudication of that issue cannot be contrary to, or an unreasonable

22 application of, Supreme Court precedent.  *See Harrington v. Richter*,

23 562 U.S. 86, 101 (2011).

24     Petitioner raised all of his claims in his habeas petitions in

25 the California Court of Appeal and the California Supreme Court, but

26 neither court explained its reasons for denying them.  (Lodged Doc.

27 Nos. 15, 18.)  The Orange County Superior Court, however, did (Lodged

28 Doc. No. 9), which this Court presumes is the basis for the state

supreme court's subsequent decision denying the claims.  In this situation, the Court looks to the superior court's reasoning and will not disturb it unless it concludes that "fairminded jurists" would all agree that the state court's decision was wrong.  *Richter,* 562 U.S. at 102; *Johnson v. Williams*, 133 S. Ct. 1088, 1094 n.1 (2013) (approving reviewing court's "look through" state supreme court's silent denial to last reasoned state-court decision).

IV.

DISCUSSION

A.   Sentencing Claims

     In Ground One, Petitioner contends that his sentence violated due process, the Eighth Amendment, and the Sixth Amendment under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  (Petition at 5.)

     1.   Background

     The trial court sentenced Petitioner to the upper term of five years on Count One (robbery) based on the following factors in aggravation: (1) the crime was carried out in a manner that indicated planning and sophistication, and (2) the crime involved the taking of a large sum of cash.  As to the Count One personal firearm use enhancement and the gang enhancement, the trial court sentenced Petitioner to the upper terms of ten years and three years respectively based on Petitioner's violent conduct and his prior convictions for weapons possession.  The trial court found no mitigating factors.  The aggregate sentence on Count one was eighteen years.  (Reporter's Transcript ("RT") at 578-79.)

     As to Counts Two (robbery), Four (robbery), and Nine (assault), the trial court imposed consecutive sentences of one year (one-third of the middle term) for each count.  As to the personal firearm use

enhancement, the trial court sentenced Petitioner to consecutive sentences of three years and four months (one-third of the upper term) for each count.  The court noted that (1) each victim was threatened by Petitioner's weapon and conduct, (2) Petitioner was on probation when the crimes were committed, and (3) his prior performance on probation was unsatisfactory.  The aggregate sentences on Counts Two, Four, and Nine were four years and four months each.  (RT at 579.)

On Counts Three (false imprisonment), Five (false imprisonment), Seven (false imprisonment), Ten (receiving stolen property), and Eleven (street terrorism), the court imposed consecutive sentences of eight months each (one-third of the middle term).[3]  (RT at 579-80.)

The trial court further explained its sentencing decision as follows:

> The sentences are consecutive, as separate acts of violence were perpetrated on the different victims, and the crime in Count 9 was committed at a different time and place.

> The court notes the favorable reports, comments of [Petitioner's] friends and relatives in court, and the comments of the letters, but notes and agrees with the comments of the probation officer that the crime and the behavior displayed by [Petitioner] completely belie any characteristic of himself as a compassionate or sensitive

---

[3]  Pursuant to California Penal Code Section 654, the trial court stayed the sentences for the gang enhancements on Counts Two through Nine and the sentence for Count Eight (possession of a firearm in a school zone).  (RT at 579-80.)

1   individual.  His actions were brutal and terrorizing to the

2   victims in this matter.

3  (RT at 580.)

4      In all, Petitioner was sentenced to thirty-four years and four

5  months in state prison.  (RT at 581.)

6      2.  <u>Dual Use of Facts</u>

7      Petitioner contends that the trial court's use of the same

8  conduct to impose the upper term and consecutive sentences violates

9  his rights under state law and his federal due process rights.

10  (Petitioner's Memorandum of Points and Authorities ("Pet. Mem.") at 1-

11  2.)  He raised this claim in his habeas petition in the Orange County

12  Superior Court, but that court denied the claim as follows:

13      On the merits, petitioner does not establish a prima

14      facie case for relief.  The trial court imposed the upper

15      ten year term on the firearms enhancement due to

16      petitioner's violent conduct *and* his prior convictions for

17      weapons possession.  (*See* Cal. Rules of Court, Rule

18      421(b)(1) and (2).)  The trial court also imposed

19      consecutive subordinate terms citing the independent nature

20      of the crimes and their objectives as well as the fact they

21      each constituted separate acts of violence.  (*See* Cal. Rules

22      of Court, Rule 425(a)(1) and (2).)  The trial court further

23      based its decision to impose consecutive terms on the fact

24      that petitioner was on probation when the crime was

25      committed and his prior performance on probation was

26      unsatisfactory.  (*See* Cal. Rules of Court, Rule 421(b)(4)

27

28

and (5).)  The record does not indicate an improper dual use of
facts by the trial court in sentencing.

(Lodged Doc. No. 9 at 2 (emphasis in original).)

A state prisoner is entitled to federal habeas corpus relief only
if he is held in custody in violation of the Constitution, laws, or
treaties of the United States.  *See* 28 U.S.C. § 2254(a); *Estelle v.
McGuire*, 502 U.S. 62, 67-68 (1991).  Absent a showing of fundamental
unfairness, habeas relief is unavailable for errors in the
interpretation or application of state sentencing law.  *See*, *e.g.*,
*Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *Miller v.
Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989).  Therefore, to the
extent that Petitioner alleges a violation or misapplication of
California's "dual use" proscription, his claim is not cognizable on
federal habeas corpus review.  *See Hurtado v. Runnels*, 428 Fed. Appx.
704, 706 (9th Cir. 2011) (misapplication of California's "dual use
proscription" involved error under state law which did not merit
habeas relief); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507
(9th Cir. 1994) ("The decision whether to impose sentences
concurrently or consecutively is a matter of state criminal procedure
and is not within the purview of federal habeas corpus.").

Even were the Court empowered to address the issue, it would
conclude that the trial court had not erred here.  Under California
law, a trial court "is prohibited to some extent . . . from using the
same factor to support more than one sentencing choice." *People v.
Scott*, 9 Cal. 4th 331, 350 & n.12 (1994).  The same factor cannot
support both imposition of the upper term and consecutive sentences
for separate offenses.  *Id.*  Nor can the same fact be used to impose

the high term on more than one enhancement. *People v. Flores*, 115 Cal. App. 3d 67, 79-80 (1981).

The trial court imposed upper terms on the firearm and gang enhancements based on Petitioner's violent conduct and his prior convictions for weapons possessions. (RT at 578-79.) The court cited several different factors for imposing consecutive sentences, i.e., that the crimes involved multiple victims, the crime in Count 9 (the assault) was committed at a different time and place, Petitioner was on probation when the crimes were committed, and his prior performance on probation was unsatisfactory.[4] (RT at 579-80.) Accordingly, as the state superior court concluded, "the record does not indicate an improper dual use of facts by the trial court in sentencing." (Lodged Doc. No. 9 at 2.) As such, this claim does not warrant relief.[5]

3. *Apprendi* Claim

Petitioner argues that the multiple, upper-term and consecutive sentences imposed on the gun enhancements violated the rule set forth in *Apprendi* because it amounted to a sentence exceeding the statutory

---

[4] A single aggravating factor is enough to impose consecutive sentences. *People v. Osband*, 13 Cal. 4th 622, 728-29 (1996); *see also Scott*, 9 Cal. 4th at 350 & n.12 ("[O]ne relevant and sustainable fact may explain a series of consecutive sentences."). Therefore, the trial court could impose consecutive sentences based solely on the fact that those counts involved different victims. *See, e.g., People v. Calhoun*, 40 Cal. 4th 398, 408 (2007) (A trial court has discretion to impose consecutive sentences where a defendant has committed crimes against multiple victims.); *People v. Valenzuela*, 40 Cal. App. 4th 358, 363-65 (1995) (trial court may use multiple-victims factor to impose consecutive sentences when crimes are so related in time and place that they constitute one criminal transaction).

[5] In the Petition, Petitioner contends that he was subjected to "multiple punishments for the same act" in violation of the Eighth Amendment, but he fails to set forth the basis for the claim. (Pet. Mem. at 1.) In any event, the superior court's determination that, under state law, Petitioner was properly sentenced would preclude any corresponding Eighth Amendment claim based on any alleged error of state law.

1   maximum based on facts not found by the jury. [Pet. Mem. at 1-2;
2   Traverse at 13.]

3        In *Apprendi*, the Supreme Court held that the Sixth Amendment
4   requires that "[o]ther than the fact of a prior conviction, any fact
5   that increases the penalty for a crime beyond the prescribed statutory
6   maximum must be submitted to a jury, and proved beyond a reasonable
7   doubt." *Apprendi*, 530 U.S. at 490. "[T]he 'statutory maximum' for
8   *Apprendi* purposes is the maximum sentence a judge may impose *solely on*
9   *the basis of the facts reflected in the jury verdict or admitted by*
10  *the defendant.* In other words, the relevant 'statutory maximum' is
11  not the maximum sentence a judge may impose after finding additional
12  facts, but the maximum he may impose *without* any additional findings."
13  *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) (citations omitted)
14  (emphasis in original); *see also United States v. Booker*, 543 U.S.
15  220, 232 (2005).

16       Here, Petitioner cannot rely on *Apprendi* because it was not
17  decided until June 26, 2000, after Petitioner's conviction became
18  final. *Apprendi* does not apply retroactively to cases that were on
19  collateral review or already final at the time the decision was
20  rendered by the United States Supreme Court.[6] *See*, *e.g.*, *Hughes v.*
21  *United States*, 770 F.3d 814, 818 (9th Cir. 2014). Accordingly,
22  Petitioner is not entitled to habeas relief on this claim.

23
24
25   _____

26       [6] Petitioner's conviction became final on January 18, 2000,
    ninety days after the denial of his petition for review to the
27  California Supreme Court. *See Bowen v. Roe*, 188 F.3d 1157, 1158-59
    (9th Cir. 1999) (state court judgment becomes final after expiration
28  of ninety-day period for petitioning United States Supreme Court for
    certiorari).

                                11

B.    Insufficiency of Evidence

    In Ground Two, Petitioner contends that there was insufficient evidence to support the gang enhancements.  (Pet. Mem. at 3-5.) Petitioner raised this claim in his habeas petition in the state superior court which ruled:

> [P]etitioner does not adequately establish that there was insufficient evidence to support the jury's finding of a gang enhancement. . . .  [T]here was evidence at trial probative of petitioner's association with the Hard Times gang.  Petitioner committed the offenses with a known Hard Times gang member as well as a known associate of the gang. Petitioner's apparent gang moniker was "Mr. Lucky."  Even if the evidence on this issue were conflicting, habeas corpus is not available to re-weigh the evidence supporting the judgment of conviction.

(Lodged Doc. No. 9 at 3.)

    Under *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court must reject an insufficiency claim if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319; *see also Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012) (per curiam) ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."). In analyzing an insufficiency claim, the Court is doubly deferential to the state court's findings.  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005)(citing 28 U.S.C. § 2254(d)); *see also Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam) ("[A] federal court may not

overturn a state court decision rejecting a sufficiency of the
evidence challenge simply because the federal court disagrees with the
state court.  The federal court instead may do so only if the state
court decision was 'objectively unreasonable.'" (citations omitted)).
If the record supports conflicting inferences, the Court "'must
presume – even if it does not affirmatively appear in the record –
that the trier of fact resolved any such conflicts in favor of the
prosecution, and must defer to that resolution.'"  *McDaniel v. Brown*,
558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at
326); *see also Juan H.*, 408 F.3d at 1275 ("In conducting our inquiry,
we are mindful of 'the deference owed to the trier of fact and,
correspondingly, the sharply limited nature of constitutional
sufficiency review.'") (citation omitted)).

        In applying the *Jackson* standard, the Court looks to state law
for the substantive elements of the crimes charged.  *Coleman*, 132 S.
Ct. at 2064 (quoting *Jackson*, 443 U.S. at 324 n.16).  Under California
law, a gang enhancement is warranted if the defendant commits a crime
(1) "for the benefit of, at the direction of, or in association with
any criminal street gang" (2) "with the specific intent to promote,
further, or assist in any criminal conduct by gang members."  Cal.
Penal Code § 186.22(b)(1) (1997).

        Petitioner appears to be challenging the sufficiency of evidence
only with respect to the showing that the crime was committed "in
association with" a gang.  Petitioner contends that he was not a gang
member when he committed the crimes and that the only evidence he waas
was that "he lived in the area which the gang . . . claimed as [its]
territory."  (Pet. Mem. at 4.)

13

1   The record includes evidence that Petitioner was a known
2   associate of the Hard Times gang and went by the moniker "Mr. Lucky."
3   (RT at 343-45, 347.)   He committed the crimes with Zapata, a Hard
4   Times gang member who went by the moniker of "Little Psycho," and
5   Tovar, an associate of the same gang.   (RT at 340-41, 347, 431-32.)
6   The crimes occurred in the Hard Times gang's territory.   (RT at 349-
7   51, 356.)   At trial, the gang expert testified that the Hard Times
8   gang's primary activities were assaults on rival gang members and
9   robberies.   (RT at 345-46.)   In the expert's opinion, Petitioner was
10  an active participant in the Hard Times gang.   (RT at 358.)   Further,
11  according to Petitioner's own trial testimony, after he and Tovar
12  planned the robberies the night prior to their commission, Hard Times
13  gang member Zapata "was brought into it."   (RT at 405.)

14  Viewing this evidence in a light most favorable to the
15  prosecution, a jury could reasonably conclude that Petitioner
16  committed the charged offenses "in association with" the Hard Times
17  gang.   *See*, *e.g.*, *People v. Albillar*, 51 Cal. 4th 47, 61-62 (2010)
18  (substantial evidence supported finding that defendants committed
19  crime in association with a criminal street gang when they "came
20  together *as gang members*" to commit the crime); *People v. Leon*, 161
21  Cal. App. 4th 149, 163 (2008) ("In this case, the People presented
22  evidence that Leon [burglarized a car and committed other crimes] in
23  association with Rodriguez, a fellow gang member.   Thus, the People
24  presented evidence that Leon committed the offenses 'in association
25  with any criminal street gang.'").   Accordingly, the state court's

26
27
28

14

1  denial of Petitioner's sufficiency of evidence claim with respect to
2  the gang enhancement is denied.[7]

3       In his Objections, Petitioner contends that the Court failed to
4  address Petitioner's challenge to the constitutionality of the gang
5  enhancement conviction on grounds that it violated the Confrontation
6  Clause.  (Objections at 16.)  According to Petitioner, the jury's
7  finding was based solely on the gang expert's testimony regarding
8  Petitioner's two "Street Terrorism Enforcement and Prevention" (STEP)
9  notices, which Petitioner contends were inadmissible hearsay.
10 (Objections at 16.)  Here, again, the Court disagrees.  There was
11 other evidence, as outlined above, to show that Petitioner committed
12 the crimes in association with the gang.

13      Further, to the extent that the finding was based on the STEP
14 testimony, Petitioner is still not entitled to relief.  In 2016, the
15 California Supreme Court held that "case-specific out-of-court
16 statements" made by a prosecution's gang expert regarding a
17 defendant's association or membership in a gang may constitute
18 inadmissible hearsay where the expert presents them as true statements

19

20      [7]  The jury could also have determined that the crimes were gang
21 related because they were committed for the benefit of the Hard Times
   gang as the gang expert had testified.  The expert noted that the
22 crimes were committed within the gang's territory and that they would
   cause people in the area to be intimidated by the gang, thereby
23 increasing the gang's control over the area.  (RT at 349.)  This
   evidence is sufficient to support the conclusion that the crimes were
24 done to benefit the gang.  *See*, *e.g.*, *Albillar*, 51 Cal. 4th at 63
   ("Expert opinion that particular criminal conduct benefitted a gang by
25 enhancing its reputation . . . can be sufficient to raise the
   inference that the conduct was 'committed for the benefit of . . . a
26 [] criminal street gang' within the meaning of section 186.22(b)(1)."
   (citations omitted); *People v. Miranda*, 192 Cal. App. 4th 398, 412-13
27 (2011) (sufficient evidence supported gang enhancement on robbery
   charge where robbery was committed in gang's claimed territory and
28 expert witness testified robbery was committed to instill fear in the
   community).

of fact without independent proof by competent evidence. *People v. Sanchez*, 63 Cal. 4th 665, 686 (2016). It determined that such statements violate the Confrontation Clause if the hearsay is testimonial, unless there is a showing of unavailability and the defendant had a prior opportunity for cross-examination or forfeited that right by wrongdoing. *Id.* Under the facts of that case, the court concluded that the gang expert's testimony regarding the police reports and STEP notice constituted case-specific testimonial hearsay that was prohibited by the Confrontation Clause and reversed the criminal street gang conviction. *Id.* at 694-98.

Nevertheless, the California Supreme Court's 2016 ruling in *Sanchez* did not establish a right to federal habeas relief in this case. First and foremost, the California Supreme Court's determination of federal constitutional law does not constitute "clearly established Federal law, as determined by the Supreme Court of the United States" and is not binding on this Court. *See Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004) ("Although lower federal court and state court precedent may be relevant when that precedent illuminates the application of clearly established federal law as determined by the United States Supreme Court, if it does not do so, it is of no moment."); *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) ("[D]ecisions of [the United States Supreme] Court are the only ones that can form the basis justifying habeas relief . . . ."). As such, the *Sanchez* decision is not determinative.

Second, the *Sanchez* holding was premised on the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). *See Sanchez*, 63 Cal. 4th at 687-94 (discussing the "evolution" of the "*Crawford* doctrine"); *People v. Meraz*, 2016 WL

16

7388320, at *7 (Cal. App. Dec. 21, 2016) ("In *Sanchez*, our high court considered the extent to which *Crawford v. Washington* . . . limits an expert witness from relating case-specific hearsay in explaining the basis for an opinion, and it clarified the application of state hearsay rules to that kind of expert testimony.").

*Crawford*, however, was decided in 2004, more than four years after Petitioner's conviction became final on direct appeal.  In *Whorton v. Bockting*, 549 U.S. 406, 421 (2007), the United States Supreme Court held that "*Crawford* announced a 'new rule' of criminal procedure," and was thus not to be applied retroactively to cases on collateral review.  Because holdings of the United States Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law, *see Williams v. Taylor*, 529 U.S. 362, 412 (2000), Petitioner cannot rely upon *Crawford* or its progeny in challenging the denial of his claim.

Finally, Petitioner's reliance on *Douglas v. Alabama*, 380 U.S. 415 (1965), *Ohio v. Roberts*, 448 U.S. 56 (1980), *Dutton v. Evans*, 400 U.S. 74 (1970), and *NAACP v. Alabama*, 377 U.S. 288 (1964), is misplaced.  None of these cases clearly establish that a gang expert's testimony based in part on hearsay violates the Confrontation Clause. In the absence of any clearly established federal law on the issue in 2002, the state courts' rejection of that claim does not warrant habeas relief.  *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the . . . [relevant issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" (citing 28 U.S.C. § 2254(d)(1))).

1  C.    Ineffective Assistance of Trial Counsel

2        In Ground Three, Petitioner claims that trial counsel violated

3  his Sixth Amendment right to effective assistance of counsel by:

4  (1) entering into a stipulation regarding the "pattern" element of the

5  gang charge; (2) failing to request a jury instruction on California

6  Penal Code § 12022(a)(1) (armed with a firearm) as a "lesser included

7  enhancement" of California Penal Code section 12022.5(a) (personally

8  using a firearm); and (3) failing to object to the gang expert's

9  testimony regarding Petitioner's "STEP" warnings.  (Pet. Mem. at 5-8.)

10       To establish a claim of ineffective assistance of counsel, a

11  petitioner must show that counsel's representation fell below an

12  objective standard of reasonableness and that the deficient

13  performance prejudiced the defense.  *See Strickland v. Washington*, 466

14  U.S. 668, 687 (1984); *see also Knowles v. Mirzayance*, 556 U.S. 111,

15  122 (2009).  The Court examines the reasonableness of counsel's

16  conduct under all the circumstances, including the facts of the case

17  as viewed by counsel at that time, granting counsel great deference.

18  *Strickland*, 466 U.S. at 689.  To prove prejudice, a petitioner must

19  show a "reasonable probability," sufficient to undermine confidence in

20  the outcome, that, "but for counsel's unprofessional errors, the

21  result of the proceeding would have been different."  *Strickland*, 466

22  U.S. at 694; *see also Richter*, 562 U.S. at 112 ("The likelihood of a

23  different result must be substantial, not just conceivable.").

24       Where, as here, an ineffective assistance of counsel claim has

25  previously been adjudicated in state court, the Court's review is

26  doubly deferential.  *Richter*, 562 U.S. at 105 ("The standards created

27  by *Strickland* and § 2254(d) are both 'highly deferential,' and when

28  the two apply in tandem, review is 'doubly' so." (quoting *Knowles*, 556

18

U.S. at 123)); *Richter*, 562 U.S. at 101, 105 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable"; because "[t]he *Strickland* standard is a general one, [] the range of reasonable applications is substantial.") (citation omitted); *see also Cannedy v. Adams*, 706 F.3d 1148, 1157 (9th Cir. 2013) ("If the state court reasonably concluded that Petitioner failed to establish either prong of the *Strickland* test, then we cannot grant relief." (internal footnote omitted)).[8]

   1.   The Stipulation Regarding Gang Crime

   Petitioner's trial counsel stipulated that "Hard Times is a criminal street gang, and that members of that gang have engaged in a pattern of criminal gang activity." (RT at 379.)  The record establishes that counsel discussed the matter with the prosecutor before entering into the stipulation and agreed to the stipulation so that the prosecution would not be able to introduce evidence regarding the gang's prior crimes.  (RT at 291.)  Obviously, this was a tactical decision by counsel and clearly well within the realm of reasonableness.  Thus, Petitioner's claim fails.

   Further, even if counsel's decision was unreasonable, Petitioner cannot prevail because he cannot establish prejudice.  There is

---

   [8]  Because an ineffective assistance of counsel claim will fail if it is determined that counsel's representation was either not deficient or not prejudicial, the Court can deny such claims without reaching a decision on the merits regarding both prongs of the required showing under *Strickland*.  *See*, *e.g.*, *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." (citation omitted)).  When a state court has denied an ineffective assistance claim in this manner, § 2254(d) does not apply as to the *Strickland* prong which the state court did not reach and federal habeas review on that issue is de novo.  *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's *Strickland* claim de novo." (citing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005))).

1  nothing before the Court to suggest that the prosecutor could not have

2  proven that Petitioner's gang engaged in a pattern of crime on behalf

3  of the gang or that Petitioner would not have been convicted had the

4  prosecution been put to that burden.   Accordingly, Petitioner shows

5  neither deficient performance nor prejudice, and this claim fails.

6       2.   The "Lesser Included Enhancement" Instruction

7       Petitioner contends that his trial counsel was ineffective for

8  failing to request an instruction on California Penal Code § 12022(a)

9  (armed with a firearm) as a "lesser included enhancement" of

10 California Penal Code § 12022.5(a) (personally using a firearm).[9]

11 (Pet. Mem. at 6; Amended Traverse at 6-17; Motion for Summary

12 Adjudication at 4-10.)   The jury found that Petitioner personally used

13 a firearm (California Penal Code § 12022.5(a)) during the robberies

14 and assault.   (RT at 550-52, 555.)   These findings resulted in a

15 consecutive ten-year term on Count One (robbery) and a consecutive

16 three year and four month terms on Counts Two (robbery), Four

17 (robbery), and Nine (assault).   (RT at 578-79.)   The jury was not

18 instructed on § 12022(a)(1), which  applies to any person "who is a

19 principal in the commission of a felony . . . if one or more of the

20 principals is armed with a firearm, whether or not the person is

21 personally armed with a firearm," and carries a one-year consecutive

22 term.   Cal. Penal Code § 12022(a)(1).   Petitioner argues that an

23 instruction pursuant to § 12022(a)(1) would have been appropriate in

24 this case because it was supported by the evidence presented at trial,

25 and, given the option, the jury might have found true that Petitioner

26

27     [9]   The parties briefed the issue of whether an evidentiary
   hearing was required on this claim.   (Docket Nos. 33, 34, 37, 38.)
28 The Court determined that an evidentiary hearing was not warranted.

was responsible as a principal under § 12022(a)(1) enhancement as opposed to finding that he personally used a firearm under § 12022.5(a).  Petitioner contends that he was prejudiced by his attorney's failure to request the instruction because the jury was presented with an "all or nothing" choice of either convicting Petitioner of personally using the firearm or acquitting him of firearm use altogether.[10]  (Pet. Mem. at 6; Amended Traverse at 6-17; Motion for Summary Adjudication at 4-10.)

Petitioner raised the claim in his habeas petition in superior court.  That court denied the claim as follows:

> [Petitioner] does not establish that a more favorable outcome was reasonably probable but for trial counsel's alleged failure to request a jury instruction on the lesser enhancement of being "armed" with a firearm as defined by Penal Code § 12022(a)(1).  At trial, there was conflicting evidence as to which of the three perpetrators had wielded the firearm during the commission of the offense.  In view of such evidence, there is no basis by which to conclude that a jury would have probably found [Petitioner] guilty of the lesser enhancement.  Habeas corpus is not available to relitigate determinations of fact made upon conflicting evidence after a fair trial.  (*See In re Dixon* 41 Cal.2d 756, 760 (1953).)

> Petitioner has not established his claim of ineffective assistance by trial counsel.  For ineffective assistance of

---

[10]  At trial, Petitioner admitted that a firearm was used during the robberies.  The defense strategy was aimed at challenging the evidence that Petitioner was the one who used it.  (RT at 382-87, 485, 489.)

counsel to appear, counsel's acts or omissions must result in the
withdrawal of a potentially meritorious defense, or, due to acts
or omissions of counsel, not amounting to the withdrawal of a
defense, it is reasonably probable that a determination more
favorable to the defendant would have resulted in the absence of
counsel's failings.

(Lodged Doc. No. 9 at 3-4 (citations omitted).)

The state court's rejection of this claim based on the absence of
a showing of prejudice was neither an unreasonable application of, nor
contrary to, clearly established federal law under *Strickland*.
Moreover, even apart from the deference due to the state court's
decision, Petitioner's claim independently fails on the deficient
performance prong of *Strickland* as well.[11]

As discussed above, Petitioner claims he was prejudiced by trial
counsel's failure to request an instruction on the lesser "principal
armed with a firearm" enhancement.  According to Petitioner, if the
jury had been given the option, it would have found him guilty of the
lesser firearm enhancement and acquitted him of personally using the
rifle.  (Pet. Mem. at 6; Amended Traverse at 6-17; Motion for Summary
Adjudication at 4-10.)  However, Petitioner has failed to show a
"reasonable probability," sufficient to undermine confidence in the
outcome, that, "but for counsel's unprofessional errors, the result of

---

[11]   Petitioner contends that the superior court applied the wrong
standard in deciding the prejudice prong and, therefore, this Court
must decide the issue de novo.  (Motion for Summary Adjudication at
16-18.)  This argument is unpersuasive.  The state court properly
concluded that, in light of the evidence of Petitioner's personal gun
use, it was not reasonably probable that the jury would have found
Petitioner guilty of the lesser enhancement.  (Lodged  Doc. No. 9 at
3-4.)  Moreover, under the circumstances here, even under a de novo
standard, the Court would find that there was no prejudice.

the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Petitioner's authority in support of this argument is distinguishable because the cases cited by him concern lesser included *offenses*, not *enhancements*.[12] As the California Supreme Court explained in *People v. Majors*, 18 Cal.4th 385 (1998), lesser included offenses are distinguishable "from so-called 'lesser included enhancements.'" *Id.* at 410-11. The court explained:

> One of the primary reasons for requiring instructions
> on lesser included offenses is "'to eliminate the distortion
> of the factfinding process that is created when the jury is
> forced into an all-or-nothing choice between [guilt] and
> innocence'" – that is, to eliminate "'the risk that the jury
> will convict . . . simply to avoid setting the defendant
> free.'" (*Schad v. Arizona*, 501 U.S. 624, 646-47 (1991).)
> This risk is wholly absent with respect to enhancements,
> which a jury does not even consider unless it has already
> convicted defendant of the underlying substantive offenses.
> *See generally People v. Wims*, 10 Cal.4th 293, 307 (1995)
> ("[A] sentence enhancement is not equivalent to a

_____

[12] Petitioner primarily relies on *Breakiron v. Horn*, 642 F.3d 126 (3rd Cir. 2011), in which the Third Circuit granted habeas relief based on trial counsel's failure to request an instruction on theft as a lesser included offense to robbery. 642 F.3d at 136-41. The other cases cited by Petitioner also involve lesser included offenses. *See Keeble v. United States*, 412 U.S. 205 (1973) (finding trial court erred by refusing to give lesser included offense instruction); *Richards v. Quarterman*, 566 F.3d 553, 568-69 (5th Cir. 2009) (involving counsel failing to request instruction on aggravated assault as a lesser included offense in the charge of murder). The only case cited by Petitioner which involved lesser included enhancements is *People v. Turner*, 145 Cal. App. 3d 658 (1983), but that case was overruled in relevant part by the California Supreme Court in *People v. Majors*, 18 Cal. 4th 385 (1998).

substantive offense, because a defendant is not at risk for
punishment under an enhancement allegation until convicted
of a related substantive offense.  [Citation.]  At that
time, a defendant's liberty interest 'has been substantially
diminished by a guilty verdict.'  (Citation.)  The
Legislature, moreover, has in various ways expressed its
intention that enhancements *not* be treated as substantive
offenses.").

*Id.*

The jury in this case had already convicted Petitioner of the
underlying robberies prior to considering the firearm enhancement.
Accordingly, contrary to Petitioner's argument, failure to instruct
the jury on the principal-armed enhancement under § 12022(a)(1) did
not cause the jury to be faced with an "all-or-nothing choice" between
conviction and acquittal and there was no "risk" it would find
Petitioner guilty of the personal use enhancement "simply to avoid
setting [Petitioner] free."  *Majors*, 18 Cal. 4th at 410-11.

There was very substantial evidence introduced at trial that
Petitioner used the rifle in all of the offenses.  First, with respect
to the assault conviction, there is no dispute that Petitioner had the
rifle when he was confronted by police, he simply claims that he did
not point it at her.  Thus, the jury would undoubtedly have convicted
Petitioner of the greater "use" enhancement whether or not counsel
requested the lesser enhancement.[13]

---

[13]   The assault conviction was based on the following facts:
After the robberies, Petitioner, Tovar, and Zapata attempted to escape
by car.  Officer Salvatierra pursued them down a dead end street.
Petitioner exited the car holding the rifle.  He turned towards
Officer Salvatierra and began to lower the barrel of the rifle in her
(continued...)

With respect to the robberies, Petitioner claims that he was the robber with a knife and Zapata was the one with the rifle. He points to the fact that a knife was found in the backseat of the getaway car, where Petitioner was sitting. (Amended Traverse at 14-17; Motion for Summary Adjudication at 5-6; RT at 309.) A second knife, however, was also found between where the getaway car was abandoned and the building in which Tovar and Zapata were later arrested. (RT at 305-06.) That knife had Zapata's fingerprints on it (RT at 378-79, 401), and it matched victim Jose Ochoa's description of the knife used during the robberies (RT at 79-81, 377-78).

Further, Petitioner testified at trial that Zapata used a knife during the robberies. (RT at 384, 390.) According to Petitioner, Zapata first had the rifle and then passed it to Tovar and used a knife to threaten Josephine Ochoa. (RT at 390.) Petitioner maintained that, in addition to Zapata, he also was armed with a knife. (RT at 387, 390-91.) However, this testimony strains credulity. Although the witnesses' testimonies were inconsistent in certain regards, none of them stated that more than one of the robbers was armed with a knife, or that the robbers exchanged weapons.[14] (RT at 67-76, 88-89, 106, 109-12, 117, 138.)

Moreover, the evidence presented at trial strongly suggests that Petitioner, not Zapata, had control of the rifle. Petitioner provided

---

[13] (...continued) direction. At that point, Officer Salvatierra shot and apprehended him. (RT at 194-202.)

[14] Although no witness saw two knives, several of the witnesses stated that they saw a rifle and a handgun. (RT at 88-90, 93, 148, 376-78.) Additionally, many of the witnesses stated that the robber with the rifle was taller than the one with a knife. (RT at 107, 124, 148, 376-78.) Petitioner is taller than Zapata. (RT at 379, 472.)

the rifle, which belonged to his brother. (RT at 392.) The rifle was
in the backseat of the getaway car with Petitioner, while Zapata and
Tovar sat in the front. (RT at 384-85, 392.) Petitioner got out of
the car with the rifle and pointed it at Officer Salvatierra. (RT at
194-202.) Additionally, Petitioner is older than both Zapata and
Tovar; at the time of the crimes, he was 21 or 22, while they were 18
and 17. (RT at 379, 430.) Petitioner and Tovar masterminded the
robberies, not Zapata. According to Petitioner's trial testimony,
Petitioner did not know Zapata well and Zapata was "brought into it"
by Tovar only after Petitioner and Tovar planned the crimes. (RT at
405, 431.) This evidence of Petitioner's possession and control of
the rifle at various times and his leadership role in the robberies
points to the conclusion that it was Petitioner, and not Zapata, who
wielded the rifle during the robberies.[15]

     In sum, it is not reasonably probable that, but for counsel's
failure to request the lesser principal-armed enhancement instruction,
the result of the proceeding would have been different. *See
Strickland*, 466 U.S. at 694; *see also Richter*, 562 U.S. at 112 ("The
likelihood of a different result must be substantial, not just

---

     [15] Significantly, the jury's finding that Petitioner assaulted
Officer Salvatierra with the rifle indicates that it did not find
Petitioner to be a credible witness. Petitioner testified that he did
not point the rifle at Officer Salvatierra. (RT at 401.) He also
testified that he was unfamiliar with the rifle and, therefore, gave
it to Zapata to use during the robberies. In convicting Petitioner of
assault, the jury evidently rejected this testimony. (RT at 418.)

conceivable."). Accordingly, the state superior court's finding that there was an absence of prejudice will not be disturbed.[16]

As to Petitioner's argument that counsel's performance was deficient, he fares no better. There is no affirmative evidence that counsel was uninformed as to the firearm enhancement issues or that he failed to reasonably consider a principal-armed enhancement instruction under § 12022(a)(1). In the absence of such evidence, Petitioner cannot overcome the presumption that counsel made a tactical decision not to request the instruction and exercised reasonable professional judgment in doing so.[17] *See Burt*, 134 S. Ct.

---

[16] Petitioner contends that the length of the jury's deliberations shows that the jury had a "difficult time deciding on the verdict" and is evidence of prejudice. (Motion for Summary Adjudication at 13-14.) This argument is rejected. The record indicates that the jury had difficulty with only one count. (RT at 538; CT at 235.) Further, despite this difficulty, the jury took only one day to reach a verdict. (RT at 538-547; CT at 234-35, 316-17.)

[17] In fact, although counsel's decision not to request an instruction under § 12022(a)(1) was not explicitly stated on the record, the record indicates that counsel performed knowledgeably and diligently with respect to defending Petitioner against the charged enhancements. Petitioner and his co-defendants were initially charged with enhancements under § 12022(a)(1) (principal armed with a firearm), § 12022.5(a) (personal use of a firearm), and § 12022(b)(1) (personal use of a knife) with respect to the robberies, false imprisonments, and assault. After the preliminary hearing, Petitioner's prior counsel successfully moved to dismiss the § 12022.5(a) enhancement with respect to the false imprisonment counts. Petitioner's co-defendants then reached plea agreements with the government. (RT at 35.) With only Petitioner remaining in the case, the prosecution made a tactical decision to drop the § 12022(a)(1) and § 12022(b)(1) enhancements with respect to the robberies, false imprisonments, and the assault, and pursue only the personal use enhancement under § 12022.5(a) with respect to the robberies and assault. (RT at 49.) The prosecutor also amended the assault charge from Penal Code § 245(d)(1) (assault with a firearm upon a peace officer) to § 245(a)(2) (assault with a firearm upon the person of another). The prosecution apparently made this amendment in order to obtain an additional personal use enhancement on the assault charge. (RT at 38-39.) Under California law at the time of Petitioner's trial, a personal use enhancement under § 12022.5(a)

(continued...)

at 17 ("It should go without saying that the absence of evidence
cannot overcome the 'strong presumption that counsel's conduct [fell]
within the wide range of reasonable professional assistance.'"
(quoting *Strickland*, 466 U.S. at 689)); *Murtishaw*, 255 F.3d at 952
(presuming, contrary to defendant's allegations, that counsel notified
defendant that submitting to examination would waive privilege against
self-incrimination, where the record contained "no supportable
allegations to the contrary").[18]

As a presumptively informed strategic choice, Petitioner's
counsel's decision is "virtually unchallengeable" absent extraordinary
circumstances. *See Raley v. Ylst*, 470 F.3d 792, 799 (9th Cir. 2006)
(citing *Strickland*, 466 U.S. at 690). Here, where an objectively
reasonable basis for counsel's actions can be ascertained,
Petitioner's challenge falls short of this exacting standard. It
would not have been unreasonable for counsel to consider that, if the
jury had been instructed on § 12022(a)(1), it would inevitably have
found that enhancement to be true as to all of the robbery charges,
based on Petitioner's admission that a co-defendant was armed with a

---

[17] (...continued)
could be imposed in cases of assault with a firearm under § 245(a)(2),
but not necessarily in cases of assault under § 245(d)(1). *See* Cal.
Penal Code § 12022.5(d) (1997) ("The additional term provided by this
section may be imposed in cases of assault with a firearm under
paragraph (2) of subdivision (a) of Section 245 . . ."). Defense
counsel objected to the amendment of the assault charge, but did not
object to the dismissal of the § 12022(a)(1) enhancement. (RT at 39-
40.") This strongly suggests that counsel was aware of and considered
the issues with respect to that possible lesser enhancement. Indeed,
during the discussion on jury instructions, the trial court asked
defense counsel if he was requesting any lesser included offence
instructions. Counsel requested one such instruction – brandishing a
weapon as a lesser included offense of assault – but stated that he
did not want any others. (RT at 447-48, 456.)

[18] In the absence of a state court finding, this court considers
the *Strickland* performance prong de novo. *See Porter*, 558 U.S. at 39.

firearm.   (RT at 391.)   On the other hand, by only instructing the jury as to personal use of a firearm, there was a possibility that Petitioner would be spared an enhancement altogether if the jury believed Petitioner's testimony.   While this decision undeniably involved risk, in the context of the overall risks facing Petitioner given the nature of the charges and the evidence against him, it was a reasonable one.   *See*, *e.g.*, *Cunningham v. Marshall*, 2010 WL 3420635, at *22 (S.D. Cal. May 25, 2010) ("If the jury had been instructed on section 12022(a) it would surely have found the enhancement to be true, based on Cunningham's own admissions.   By only instructing the jury as to 'use' of a firearm, there was a possibility that Cunningham would be spared an enhancement altogether.   Thus defense counsel's decision not to request an instruction under section 12022(a) was not unreasonable.").   Habeas relief, therefore, is not warranted on this claim.[19]

### 4.   "STEP" Warnings

Finally, Petitioner contends that counsel was ineffective because he failed to object to the gang expert's testimony regarding Petitioner's "STEP" warnings.   (Pet. Mem. at 7-8 (citing RT at 342-43).)   At the time of Petitioner's trial, California law allowed an expert witness to offer an opinion based on material that was not

---

[19]   *See also Miller v. Nooth*, 403 Fed. Appx. 291, 292 (9th Cir. 2010) (counsel's strategic decision to pursue an "all-or-nothing" approach to obtain outright acquittal was "compatible with the law and the evidence presented at trial" and petitioner was "not denied effective assistance of counsel"); *cf. Crace v. Herzog*, 798 F.3d 840, 852-53 (9th Cir. 2015) (noting that, in certain circumstances, "it might be reasonable for a defense attorney to opt for an 'all-or-nothing' strategy," but finding counsel's performance deficient where counsel's strategy not to request lesser included instruction was "clearly inappropriate" in light of a possible third strike conviction and "decades of prison time").

otherwise admissible, including hearsay, as long as the material was a type that was reasonably relied on by experts in the particular field in forming their opinions. *See People v. Gardeley*, 14 Cal. 4th 605, 619 (1996), *disapproved in part by Sanchez*, 63 Cal. 4th at 686 n.13. Prior to *Sanchez*, the type of hearsay considered in this matter (i.e., the STEP notices) was the type reasonably relied on by gang experts and routinely admitted at trial. *See*, *e.g.*, *People v. Sanchez*, 223 Cal. App. 4th 1, 20 (2014) (affirming trial court's ruling that gang expert's testimony regarding STEP notice containing hearsay was properly admitted), *overruled by Sanchez*, 63 Cal. 4th 665.  As such, any objection by counsel at Petitioner's trial in 1997 would have been fruitless.  Nor was counsel deficient for failing to anticipate that the law would change many years later. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004) ("*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms."); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").  In light of the fact that the existing law would not have supported counsel's objection to the gang expert's testimony regarding Petitioner's "STEP" warnings, counsel's failure to do raise an objection on this ground was not ineffective assistance under the Constitution.

D.    <u>Ineffective Assistance of Appellate Counsel</u>

In Ground Four, Petitioner contends that his appellate counsel was ineffective for not raising Petitioner's claims in Grounds One and

Two on direct appeal.  (Petition at 6.)  There is no merit to this claim.

The Sixth Amendment right to the effective assistance of counsel extends to appeals.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985) (holding Due Process Clause guarantees a criminal defendant effective assistance of counsel on his first appeal as of right).  That being said, however, appellate counsel is not required to raise every nonfrivolous issue requested by a defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  Rather, appellate counsel is called upon to select from among many potential issues the one or ones that stand the best chance of winning.  *Id.*; *see also Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (noting "weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy").

Petitioner has failed to meet his burden on either of *Strickland*'s prongs.  He has not established that appellate counsel failed to consider these claims, or that counsel failed to make a reasoned judgment regarding their merit, or lack thereof of them. Furthermore, as discussed above, he has not demonstrated actual prejudice because he has not shown that he would have prevailed on his appeal had any of the omitted claims been presented.  *See Smith*, 528 U.S. at 285-88; *Strickland*, 466 U.S. at 694; *Jones*, 463 U.S. at 751-54.  Accordingly, this claim is denied.

V.

RECOMMENDATION

For these reasons, IT IS RECOMMENDED that the Court issue an Order (1) accepting this Final Report and Recommendation and

31

1 (2) directing that Judgment be entered denying the Petition and

2 dismissing the case with prejudice.[20]

3      DATED: February 10, 2017.

4

5                                   PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   S:\PJW\Cases-State Habeas\ESPINOZA, B 358\Amended R&R.wpd

25   _____

26        [20]  The Court is not inclined to issue a certificate of
     appealability in this case.  *See* Rule 11, Federal Rules Governing
27   Section 2254 Cases ("The district court must issue or deny a
     certificate of appealability when it enters a final order adverse to
28   the applicant.").  If Petitioner believes a certificate should issue,
     he should explain why in his Objections.